**NATIONAL FOLDING BOX & PAPER CO. v. ROBERTSON'S ESTATE.***

(Circuit Court, D. Connecticut. October 29, 1903.)

No. 1,019.

**1. PATENTS—DAMAGES FOR INFRINGEMENT—INCREASE BY COURT.**
    A court is warranted in exercising the discretionary power given by
    Rev. St. § 4921 [U. S. Comp. St. 1901, p. 3395], to increase the damages
    found to have been sustained by a complainant by the infringement of a
    patent, where the infringement was palpable, and defendant persisted in
    it after full knowledge of the patent and an opportunity to settle, and has
    shown a determination to litigate to the end, and to cause all the delay
    and expense possible.

In Equity. Suit for infringement of patent. On defendant's ex-
ceptions to master's report, and complainant's motion for increased
damages under Rev. St. § 4921 [U. S. Comp. St. 1901, p. 3395].

See 112 Fed. 1013.

Walter D. Edmonds, for complainant.
Charles W. Comstock, for defendant.

PLATT, District Judge. The master has performed his duties
under the accounting with exemplary and painstaking care and pa-

* Rehearing denied February 2, 1904

tience.   My labors have thereby been much lessened.   His action in regard to the four accounts, where he allows only the profits which the defendant admits, rather than the damage which the complainant claims, evidences the exceeding caution which characterized his progress.   The criticisms upon the report which the defendant embodies in its exceptions do not commend themselves to my mind.   The exceptions are overruled.

Upon Complainant's Motion for Increased Damages.   The discretion of the court is invoked, and certain facts are presented which it is claimed should affect that discretion favorably to the complainant. The defendant continued making and selling even after the last plain notice from complainant's attorneys.   It knew the plaintiff as a competitor, and had knowledge of the patent in suit under which its boxes were made.   It knew that Gair had been enjoined from making a similar box.   It is not conceivable that an infringement could have been carried on so extensively without, at the very least, inducing the purchaser to believe that he would be protected from personal loss.   To so act as to induce such belief without actually becoming responsible for the results would be even worse than to have guarantied the customer against loss in plain terms.   The probable course of action adopted by it, and which is forced upon me as a conclusion by an almost irresistible inference, did a harm both to the owner of the patent and to the defendant's customers.   The defendant appears to have been treated with consideration by the plaintiff's manager, Mr. Walton.   It is fair to say that it might have averted the consequences of a palpable infringement by a payment of $2,000, and was given an opportunity to make a counter proposition thereto, if it had so desired.   It is quite evident that it decided, in cold blood, to fight to the last ditch, rather than pay any considerable sum; and it has, without question, carried on such a warfare, and the end is not yet. In that battle the issue of noninfringement has never been suggested.   Resort has been had to every expedient, possible or seemingly impossible, which could make for delay and expense.   It is true that all these doings have been expensive to itself as well as to the complainant, but the discretionary power with which the court is invested by the statute means more than a power to punish the wrongdoer.   The deterrent effect of the punishment upon others should not be overlooked.   Our patent laws are thought by many persons to furnish inadequate relief to the patentee.   The inventor of moderate means, after sustaining his rights by litigation, is really at the threshold of his contention.   The terrors of the accounting loom up before him with something of the force which in olden times the suggested horrors of the inquisition must have presented to the Christian martyr.   It would seem to be the time to read a lesson somewhat sharply to the parties who indulge too freely in such experiments as are disclosed upon the record in this action.   The defendant is not taken unawares.   The plaintiff gave due notice of his intention long before the conclusion of the controversy.   A person may be regarded as acting "wantonly" who acts without regard to propriety or the rights of others, or is careless of consequences, and yet without settled malice.   Looking at the case in all its lights, the defendant appears to

have been "stubbornly litigious," or at least, to have "caused unnecessary expense and trouble." Day v. Woodworth, 13 How. 372, 14 L. Ed. 181.

The court cannot increase profits in equity actions. Covert v. Sargent (C. C.) 42 Fed. 298. In the master's report, he finds that $66.59 are "profits derived by defendant." I do not think I can increase that item. The balance, $1,454.02, are damages, and are subject to discretion. The difficulty that the master experienced in arriving at the damages, owing to the lack of identification of the infringing boxes in the books of account, makes it quite possible that the actual damage may have been in excess of that found. This fact, and the other fact that the plaintiff has been kept out of his due for a long time, count heavily as additional reasons for the demand made upon the court's discretion. It is, therefore, in and under all the circumstances of the case, considered a fair exercise of discretion to increase the damages to $4,362.06. To this will be added the profits, found to have been $66.59.

Let a decree be entered for $4,428.65. Interest on the amount found to be due by the master should be computed from the date of his report. Interest on the larger amount resulting from the exercise of the court's discretion should commence from the date of the decree.